Please sit down. First case this afternoon, Continental Tire North America v. Workers' Compensation Comm'n, 5-11-0207. Counsel, please. May it please the court, my name is Sharon Bravaia. I represent Mr. Jones. I represent the employer, Continental Tire. This is actually a repetitive trauma case that was filed by Mr. Jones. Could you keep your voice up just a little bit, please? Of course, Your Honor. Mr. Jones alleged a repetitive trauma injury August 1, 2006. The arbitrator awarded benefits to both the right and left leg. We appealed it to the commission. The commission vacated the award with regard to the left leg, reduced the amount of the award for the right leg. That was the majority decision. The dissent would have denied an award with regard to the right leg as well. We appealed it to Jefferson County. Jefferson County affirmed the decision. The main issue on appeal is based on the very strange facts that developed in this case at the hearing. Prior to the hearing, we were all operating under a belief that Mr. Jones walked into Dr. Cohen's office with knee pain for the past four years. X-rays and an MRI were taken. A medial meniscus tear was noted. Degenerative arthritis was noted. A scope was performed. He gets released back to work, has difficulties after he returns back to work, goes back to Dr. Cohen, and ends up getting a partial knee replacement. With that said, this would be a typical case except for the fact that when Mr. Jones was at the hearing, he testified that he actually injured his knee six months prior to his repetitive trauma date of August 1, 2006 when he was pushing a cart. He said that's when it was hurt. He stated that he should have gone to the nurse that day. He couldn't exactly recall the day that it happened. He remembered the specific incident, didn't fill out a report of injury, wished he had done so, and couldn't recall whether he had told Dr. Cohen of the specific incident when he was treating with him. While Dr. Cohen's records do not identify any sort of traumatic accident except for the noting that the meniscus tear was an acute problem. With that said, the problem with this case is that the commission awarded benefits on a repetitive trauma theory. The question of law that has been presented to the court today is basically can a petitioner take a traumatic claim, fail to report it, basically blow the deadlines for notice and sit back and then turn around and file a repetitive trauma claim thereafter. Can I rephrase that? Didn't both doctors agree that the underlying arthritic condition was due to a gradual progression and not a single acute incident? And didn't the claimant testify that he had worsening knee pain for about four years before? So that's in the mix too, right? Well, that's in the mix too, but if you've had problems for four years and you suddenly have a traumatic accident and then you go seek treatment after it and they find a torn meniscus, it kind of slants the evidence as to why he was getting treatment. And if you look at the MRIs from Dr. Cohen, it's clear that the first scope surgery that was performed is because of the torn medial meniscus. And that's the problem we get into. It's like if we're treating this for an injury to his meniscus, it would appear that that injury occurred six months prior and he didn't report it and basically turned around and filed it as repetitive trauma, which with the underlying degenerative arthritis was accepted by the commission. And the question that basically, you know, Connell Tyer has asked is, you know, if you fail to timely report and timely file a claim with regard to a traumatic injury, can you then convert it into a repetitive trauma by continuing to work on it? Well, what about if it's a gradual progression? It's not completely disabling and then there's one additional incident at the end. What about if the argument is you're punishing the claimant for sort of taking one for the team all this time? He's a good worker, he's there, he's got minor problems culminating and then it's one day. Should he be denied benefits? No, but he should follow the same rules that every other employee has to follow, which is when you have an accident, you report it to your employer, you file a claim timely. And I don't see an exception to that based on these facts. I mean, he specifically stated he should have reported it. He didn't report it, he didn't go to the nurse and he said he wished he had done so. I mean, there have been plenty of cases where somebody didn't provide notice to the employer who basically had his claim barred because of it. You know, that's not fair to them in all honesty because, you know, they blew that timeline. But what's the difference between that and this case? Does prejudice have to be shown under any circumstances? Not if the notice is outside the 45 days based on why. And in this case, there is no notice and he specifically stated there was no notice. And the problem with allowing this to happen is that you then end up with is it an accident date or is it a manifestation date? Because clearly he knew that he injured himself six months prior, he testified to that. I was pushing a cart, it hurt, it popped, should have reported it. So should we be dealing with August 1, 2006 or are we supposed to be dealing with six months earlier? I mean, we're basically muddying the waters by creating a hybrid between a traumatic accident and a repetitive trauma claim. So, in essence, it's a fair question of the commission, correct? I don't think so, Your Honor. I mean, we have two sets of ways that a claimant can develop a claim. A traumatic accident which you follow it based on the date of accident or repetitive trauma. In this case, he clearly had a traumatic accident, didn't report it, and then turns it into a repetitive trauma claim somewhere down the road. And that's basically circumventing the entire reason we have statutes with notice and all the rest of it. And that's basically the question that we're putting to this court, you know. Can you convert a traumatic accident into a repetitive trauma simply by not following the statutes that say what you're supposed to do when you have a traumatic claim? And that is the question that we have posed to this court, and it's our position that you cannot. It's simply, you know, one or the other. And for that reason, we have asked that this court vacate the award to the right leg. Alternatively, we also had an issue with the manifest way of the evidence on Dr. Cohen's opinion and the reliance by the commission thereon because basically his opinion when he was deposed was that the, that Mr. Jones' opinion, Dr. Cohen's opinion of causation with regard to Mr. Jones and his job was based on the belief that Mr. Jones' job consisted of repetitive bending, lifting tires, and standing on a concrete floor. And the evidence that was put in at the hearing indicated nothing with regard to repetitive bending. He testified that he didn't lift tires, and he said that he stood on a rubber mat, not on the concrete. So that's your opinion on causation. And clearly we think that's a little weak considering that there was also a videotape that wasn't reviewed, which there was, you know, it didn't have the pushing of the parts on it. But in any event, we've asked that the causation finding be bound against the manifest way of the evidence in the event that the court is willing to accept the conversion of a traumatic accident into a repetitive trauma claim. Any other questions? Thank you. Thank you. Counsel, please. Counsel. Lisa Cord, Gary Pimett for the Kerry Jones. I believe that this is totally a fact issue. How about the timely notice? Well, there is no evidence that any pop six months before caused any particular physiological problem. If you notice that when he goes to Dr. Cohen finally, he says, I have popping and swelling in my knee on a regular basis. There's no medical anywhere before that regarding this. So we can't say that there's not proper notice when there's no evidence that there's any injury to that knee before this, other than just one of his normal pops. So I don't believe that notice is not an issue here. Notice is kind of a red herring that counsel's respondent employers is trying to bring up here because it had no defense to the repetitive trauma. The commission looked at whether this was a single incident or repetitive nature. And as the court has so far asked, all the evidence was that it was from both doctors, even Dr. Williams, the doctor who did the records review, thought that the condition was a degenerative condition that preexisted even the six months. And when Dr. Cohen did the surgery and in his deposition he said, it was fraying of the meniscus. It looked like it was a degenerative type of tear instead of an acute tear. There is no evidence that any particular pop at work at any time was a cause of any injury. There's no evidence for that. So that's why I don't think notice is an issue at all. Okay. Well, when counsel says he testified that he was injured on that date and everything, I mean, how did that come up in the hearing? I mean, was that on direct examination or across? Or, I mean, did he just describe that as one incident or did he say that's the day I sustained my injury? I don't remember if it was on direct or across, but he did testify about having an incident at work. There was also, like I said, reports. But he didn't go to the nurse because he didn't have any particular problems. Like I said, he went and talked to Dr. Cohen. He says, this happens on a regular basis. I have popping in my knee. And you have to make assumptions if you buy the lawyer's argument here that that one, we don't even know what day it is, one popping incident at work caused all this problem. That makes less sense than the repetitive nature of the job, which in the facts that both of us prevented is, I think you can agree, is a pretty labor-intensive job, pushing these books, working a pedal, climbing up on the pedals to reach other parts. It does put a lot of stress on his legs. Dr. Cohen practices in Mount Vernon, where Continental Power Plant is. He testified that I'm familiar with the jobs there. I have treated a lot of people from there. I do believe that kind of work can cause the degenerative condition in his knee. Unlike Dr. Williams, who the commission, by the way, gave, but specifically we give little credibility to, testified that he looked at this videotape, but it's all in agreement that the videotape doesn't show what Mr. Jones testified was the major problem, that's the pushing of these books in and out. The commission looked at arbitration's decision and said, this is not where it was just a rubber stamp. They looked at it. They made adjustments to it. They reduced the nature and extent from 45 to 40. They found that the left knee didn't have sufficient evidence, but it adopted everything else, including the fact that the Trier's effect found Dr. Cohen more credible than Dr. Williams and found Kerry Jones credible. We believe the notice issue in this phantom popping injury, which he estimated at six months, it could very well have been 44 days. We just don't know that. So to find that it was past the statute of limitations is assuming facts that are not evidence, and we believe that the commission made the correct decision. We'd ask that the court make those findings and sustain the commission's decision. Thank you. Counsel. Your Honors, I appreciate the fact that what Mr. Bromet says is that these are facts and evidence. The facts and evidence clearly indicate that this man testified that he injured his knee approximately six months before he claimed repetitive trauma injury. While we get into neither one of the doctors testified that there was a traumatic injury. Why would they? None of us found out about it. The injury date is August 1, 2006. All of his treatment was done. The record review was done. We were sitting at a hearing in October of 2008 when suddenly it came spilling out of the petitioner's mouth, oh, I had an accident six months before my repetitive trauma injury. None of the physicians. This was on cross-examination. Well, actually, it was on cross-examination. I mean, those are the pages of transcripts you refer to in your brief. It was during cross-examination. But interestingly, it was the petitioner who just kind of fell out. And with that said, you know, nobody had the chance to have any of the physicians addressed. Well, gee, do you think the meniscal tear might have been caused by this popping six months ago? Well, you keep saying six months, and I'm just kind of reading it. He says several times he didn't know when it happened. He doesn't know, and then if you get to the last page, he does. At some point he must have got pinned down and said, well, maybe it was six months. He says it. He says it. I understand, but after about three or four times of saying it, I don't know when it happened. So, I mean, you're kind of characterizing this as there was this huge surprise testimony where he came claiming that there had been trauma, and then he testified it was all about a specific incident. But this is all on cross-examination. It starts on 247, Your Honor. And the question was, and I think you specifically said, and that's what caused my problems, referring to pushing one of the cassettes. That's how I hurt my knee. Was there a specific incident one day when your knee popped, and that's when it hurt? Yes. When did it happen? I don't know. I couldn't tell you. We pushed so many in and out. It was wrong at the time. I mean, you felt the pain out there. The job, probably not the highest pay. It goes on. There was a specific incident one day when your knee popped, and you felt some sudden pain. Is that correct? Yes, but I can't tell you when it was. Was that four years ago when you started having the problems? I don't know. I honestly can't answer that. Okay. So then he goes on. So sometime before Dr. Cohen scoped your knee in 06, and then the four years prior, you had an incident when your knee popped, and you had a sudden onset of pain. He said, I had my knee scoped in 06. The main one that stands out in my mind was probably six months before I went to Dr. Cohen. So he said it happened several times, and the main one is that time. But my point is, he didn't come into this arbitration hearing claiming you were affected by trauma, and then totally change his theory. Well, we had no information of him testifying or providing any information to any of the physicians that he had had this pain and popped six months beforehand. Had he reported it like he said he wished he would have, then we all would have known about it, and it could have been investigated, which was the whole point of notice. And that's the whole problem with the claim, is it's like we didn't have any of this information, and that's the whole point of having notice. Where did I get the idea that the employer said there was timely notice of the repetitive trauma injury? We were provided timely notice of the repetitive trauma injury, which was August 1, 2006. But if you base it on the claimant's testimony saying he had this traumatic injury six months before, we didn't have any notice of that. And he even testified that he didn't tell anyone at Continental Tire of that incident. So if you pin him down and question him about one of the times that he suffered some pain out of a series of repetitive trauma incidents, then that somehow throws out his repetitive trauma claim. Now it becomes a specific trauma claim. Is that what you're arguing? So all you've got to do is pin him down and make him describe one in the cross-examination, and then we're going to change it into a specific trauma? If he testifies that he's pushing a cart and he feels a pop and he felt a lot of pain with it, to me that's a traumatic accident. The fact that his record showed a meniscal tear, which is certainly consistent with the popping, and that his own physician says it was an acute injury, it kind of all falls into oblivion. There was no way for us to investigate it because we were already hearing what was developed. Any other questions? Thank you. The court will take the matter under advisement for disposition.